**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| BILLY STEVEN BRAVO MORALES,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS VICTOR COOK; SEACO NATIONAL CORP. d/b/a SOUTHEAST PET; and MHC TRUCK LEASING LLC,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Billy Steven Bravo Morales, by and through his undersigned counsel, complains of the Defendants and alleges as follows.

## PARTIES

1. Plaintiff Billy Steven Bravo Morales ("Plaintiff") is a natural person domiciled in Hamilton County, Tennessee, and is a citizen of the State of Tennessee for purposes of 28 U.S.C. § 1332.

2. Defendant Francis Victor Cook ("Cook") is a natural person domiciled in Cobb County, Georgia, and is a citizen of the State of Georgia. At all relevant times Cook held a Georgia Class A commercial driver's license and operated a commercial motor vehicle in interstate commerce on the highways of South Carolina.

3. Defendant Seaco National Corp., doing business as Southeast Pet ("Seaco"), is a corporation organized under the laws of the State of Georgia with its principal place of business, the place from which its officers direct, control, and coordinate its activities, at 7775 The Bluffs,

Suite H, Austell, Georgia 30168. Seaco is therefore a citizen of the State of Georgia. Seaco is a motor carrier registered with the Federal Motor Carrier Safety Administration ("FMCSA") under USDOT No. 263845 and MC-1012206, and it transports property in interstate commerce, including through South Carolina.

4. Defendant MHC Truck Leasing LLC ("MHC") is a limited liability company organized under the laws of the State of Kansas with its principal place of business at 11120 Tomahawk Creek Parkway, Leawood, Kansas 66211. On information and belief, the sole member of MHC is Murphy-Hoffman Company, a Kansas corporation with its principal place of business in Leawood, Kansas, and no member of MHC is a citizen of the State of Tennessee. MHC is therefore a citizen of Kansas. MHC is in the business of leasing commercial motor vehicles, is registered with FMCSA under USDOT No. 339774, and was the registered owner of the tractor described below.

5. On information and belief, at all relevant times Cook was an employee, statutory employee, or agent of Seaco within the meaning of 49 C.F.R. § 390.5, and was acting within the course and scope of that employment or agency.

6. On information and belief, at all relevant times Seaco leased the tractor described below from MHC and operated it under Seaco's USDOT registration and operating authority, and MHC retained obligations for the inspection, maintenance, and repair of the tractor under the terms of that lease.

**<u>JURISDICTION AND VENUE</u>**

7. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Tennessee. Defendants are citizens of Georgia and Kansas. No Defendant

is a citizen of Tennessee, and complete diversity of citizenship exists between Plaintiff and every Defendant.

8. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff sustained a comminuted, displaced fracture of the left clavicle requiring open reduction and internal fixation, a displaced fracture of the left scapula, a hospital admission, approximately twelve weeks of total disability from employment, permanent retained hardware and scarring, and continuing pain and loss of function, and Plaintiff seeks punitive damages.

9. This Court has personal jurisdiction over each Defendant under Fed. R. Civ. P. 4(k)(1)(A) and S.C. Code Ann. § 36-2-803 because each Defendant transacted business in South Carolina, committed a tortious act in whole or in part in South Carolina, and caused injury in South Carolina by an act or omission in this State. Each Defendant's contacts with South Carolina arise from the operation of a commercial motor vehicle on Interstate 85 in Spartanburg County, and the exercise of jurisdiction comports with due process.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Spartanburg County, South Carolina. Assignment to the Spartanburg Division is proper under 28 U.S.C. § 121(10) and Local Civil Rule 3.01 because the collision occurred in Spartanburg County.

11. Plaintiff asserts only claims arising under the law of South Carolina. Plaintiff does not assert any claim arising under federal law. References to federal regulations identify the standard of care applicable to Defendants under South Carolina negligence law.

## FACTS

12. On June 11, 2026, at approximately 4:30 a.m., Plaintiff was an occupant of a 2004 Ford F-250 pickup truck (the "Pickup") that was stopped on the right shoulder of Interstate 85 southbound near mile marker 66, just south of Exit 68, in Spartanburg County, South Carolina.

13. The Pickup had become disabled and was lawfully stopped entirely on the paved shoulder, outside the travel lanes of Interstate 85.

14. At the same time and place, Cook was operating a 2021 Kenworth T680 truck-tractor, Kansas registration 200279, VIN 1XKYD49X2MJ461168 (the "Tractor"), in combination with an enclosed semi-trailer (together, the "Truck"), southbound on Interstate 85 in the course of interstate commerce. The Truck had a gross combination weight rating of more than 26,000 pounds and was a commercial motor vehicle as defined in 49 C.F.R. § 390.5 and S.C. Code Ann. § 56-1-2030.

15. Cook drove the Truck off the right side of the travel lanes of Interstate 85 and onto the shoulder, where the Truck struck the rear of the stopped Pickup with great force. The impact caused disabling damage to the Pickup, broke the seat in which Plaintiff was seated forward, and threw Plaintiff against the interior of the Pickup.

16. Nothing about the roadway, the weather, traffic, or the Pickup required or excused Cook's departure from the travel lanes.

17. On information and belief, Cook's departure from the travel lanes was the product of one or more of the following: fatigue or falling asleep at the wheel; inattention or distraction, including the use of a mobile telephone or other electronic device; excessive speed for the

darkness and curvature of the roadway; or a failure to maintain a proper lookout. The precise cause is within the knowledge of Defendants and is recorded in the Truck's electronic control module, electronic logging device, telematics, and camera systems.

18. Plaintiff did nothing to cause or contribute to the collision. Plaintiff was at rest inside a stopped vehicle on the shoulder when the Truck struck it.

19. Plaintiff sustained numerous, severe, and permanent injuries, and has incurred medical expenses for emergency transport, emergency care, imaging, surgery, hospitalization, and orthopedic follow-up care, and on information and belief will incur future expenses for hardware removal or other treatment.

20. On information and belief, Seaco employed Cook as a commercial driver, dispatched Cook on the trip during which the collision occurred, and controlled the schedule, route, and load that Cook was carrying.

21. On information and belief, Seaco leased the Tractor from MHC and operated it under Seaco's USDOT number and its interstate operating authority. The Tractor's registration remained in MHC's name, and a commercial automobile liability policy issued to Seaco by Amerisure Mutual Insurance Company covered the Tractor at the time of the collision.

22. As a motor carrier, Seaco was required by 49 C.F.R. § 390.11 to require its drivers to comply with the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Parts 350 through 399, which South Carolina has adopted for commercial motor vehicles operating on its highways, see S.C. Code Ann. § 58-23-1010 et seq. and S.C. Code Ann. § 56-5-4100 et seq.

23. The collision resulted in bodily injury to persons who received immediate medical treatment away from the scene and in disabling damage to vehicles that were towed from the scene, and Cook received a citation for a moving violation arising from the collision. Under 49 C.F.R. § 382.303, Seaco was therefore required to test Cook for alcohol within two hours and for controlled substances within thirty-two hours of the collision, or to document why it did not. On information and belief, Seaco did not do so.

24. On information and belief, FMCSA inspection data shows that in the twenty-four months preceding the collision Seaco's vehicles were placed out of service at a rate exceeding the national average, and that MHC's leased vehicles had been cited for inoperative brake components.

25. On information and belief, Cook's physical condition at the time of the collision, including a body weight in excess of 300 pounds, placed him at elevated risk for obstructive sleep apnea and fatigue, a risk that Seaco knew or should have known through the medical qualification process required by 49 C.F.R. §§ 391.41 through 391.49.

## <u>FOR A FIRST CAUSE OF ACTION</u>

### Negligence of Defendant Cook

26. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

27. Cook owed Plaintiff and the motoring public a duty to operate the Truck with the degree of care that a reasonably prudent commercial driver would exercise under the same or similar circumstances, including the heightened care required of the operator of an eighty-thousand-pound vehicle at night.

28. Cook breached that duty in one or more of the following particulars:

(a) in failing to keep the Truck within the marked travel lanes;

(b) in driving the Truck onto the shoulder of a controlled-access highway;

(c) in driving at a speed greater than was reasonable and prudent under the conditions, including darkness and the curvature of the roadway;

(d) in failing to keep a proper lookout;

(e) in failing to keep the Truck under proper control;

(f) in operating the Truck while fatigued, drowsy, or otherwise impaired in alertness (on information and belief);

(g) in operating the Truck while distracted, including by a mobile telephone or other electronic device (on information and belief);

(h) in failing to see and avoid a stopped vehicle that was plainly visible on the shoulder; and

(i) in failing to act as a reasonably prudent commercial driver would under the circumstances.

29. Cook's negligence was a direct and proximate cause of the collision and of Plaintiff's injuries and damages.

30. Plaintiff is entitled to recover actual damages from Cook in an amount to be determined by the jury.

## FOR A SECOND CAUSE OF ACTION

**Negligence Per Se of Defendant Cook**

31. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

32. The statutes and regulations identified below were enacted to protect persons lawfully on or beside the public highways, including occupants of vehicles stopped on the shoulder, from the hazards of commercial motor vehicles operated unsafely. Plaintiff is a member of the class those enactments protect, and his injuries are of the kind they were intended to prevent.

33. Cook violated the following provisions of the South Carolina Code of Laws:

(a) S.C. Code Ann. § 56-5-1520(A), by driving at a speed greater than was reasonable and prudent under the conditions and by failing to control his speed so as to avoid colliding with a vehicle on the highway, as found by the investigating trooper;

(b) S.C. Code Ann. § 56-5-1810, by failing to drive upon the right half of the roadway within the travel lanes;

(c) S.C. Code Ann. § 56-5-1900, by failing to drive as nearly as practicable entirely within a single lane and moving from that lane when it could not be done with safety; and

(d) S.C. Code Ann. § 56-5-3890, by using a wireless electronic device to compose, send, or read a text-based communication while driving (on information and belief; to be developed in discovery).

34. Cook violated the following provisions of the FMCSRs, which govern the operation of commercial motor vehicles on South Carolina highways and define the standard of care for a commercial driver:

(a) 49 C.F.R. § 392.2, which requires a commercial motor vehicle to be operated in accordance with the laws of the jurisdiction in which it is being operated, by committing the state-law violations alleged above;

(b) 49 C.F.R. § 392.3, which prohibits a driver from operating a commercial motor vehicle while his ability or alertness is so impaired by fatigue, illness, or any other cause as to make it unsafe to continue (on information and belief);

(c) 49 C.F.R. § 392.14, which requires extreme caution and reduced speed when hazardous conditions, including darkness, adversely affect visibility;

(d) 49 C.F.R. §§ 392.80 and 392.82, which prohibit texting and the use of a hand-held mobile telephone while driving a commercial motor vehicle (on information and belief);

(e) 49 C.F.R. § 395.3, which limits a property-carrying driver's driving and on-duty time, and 49 C.F.R. §§ 395.8 and 395.22, which require accurate records of duty status on an electronic logging device (on information and belief);

(f) 49 C.F.R. § 391.11 and §§ 391.41 through 391.45, which require a driver to be physically qualified and to carry a valid medical examiner's certificate (on information and belief);

(g) 49 C.F.R. § 383.51 and Part 383 generally, to the extent Cook's commercial driver's license was suspended, restricted, or otherwise not valid for the vehicle he was operating (on information and belief);

(h) 49 C.F.R. Part 382, to the extent Cook operated the Truck with alcohol or a controlled substance in his system or after refusing or evading a required test (on information and belief); and

(i) 49 C.F.R. Part 393 and § 396.13, to the extent Cook operated the Truck with defective equipment or without a satisfactory pre-trip inspection (on information and belief).

35. Cook's conduct also fell below the standards for speed management, night driving, hazard perception, and fatigue set out in the South Carolina Commercial Driver License Manual, which every holder of a South Carolina or Georgia Class A license is tested on and expected to know.

36. Each violation constitutes negligence per se under South Carolina law and was a direct and proximate cause of the collision and of Plaintiff's injuries and damages.

## FOR A THIRD CAUSE OF ACTION

### Willful, Wanton, and Reckless Conduct of Defendant Cook

37. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

38. Cook knew that operating a loaded tractor-trailer at night, at a speed too fast for conditions, while fatigued or distracted, created a high probability of catastrophic injury to others on the highway. Cook consciously disregarded that risk.

39. Cook's conduct, including driving the Truck entirely off the travel lanes and into a stopped vehicle on the shoulder without braking or evasive action sufficient to avoid the collision, was willful, wanton, and reckless and showed a conscious indifference to the rights and safety of others.

40. Cook's willful, wanton, and reckless conduct was a direct and proximate cause of Plaintiff's injuries, which Plaintiff will prove by clear and convincing evidence, and entitles Plaintiff to an award of punitive damages against Cook under S.C. Code Ann. § 15-32-510 et seq.

## FOR A FOURTH CAUSE OF ACTION

### Vicarious Liability of Defendant Seaco

41. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

42. At the time of the collision Cook was acting within the course and scope of his employment or agency with Seaco, operating a vehicle furnished by Seaco, on a trip dispatched by Seaco, for Seaco's benefit.

43. Seaco is liable under the doctrine of respondeat superior for all of Cook's negligent, grossly negligent, willful, wanton, and reckless acts and omissions alleged herein.

44. Independently, as the motor carrier under whose USDOT registration and operating authority the Truck was being operated, Seaco is responsible under 49 C.F.R. §§ 390.5 and 390.11 and the FMCSRs for the acts and omissions of its driver in the operation of the Truck, regardless of whether Cook is characterized as an employee or an independent contractor.

45. Plaintiff is entitled to recover from Seaco all actual damages caused by Cook, and punitive damages for Cook's willful, wanton, and reckless conduct, in an amount to be determined by the jury.

## FOR A FIFTH CAUSE OF ACTION

**Negligent Hiring, Qualification, Training, Supervision, and Retention of Defendant Seaco**

46. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

47. Seaco owed the motoring public, including Plaintiff, a duty to exercise reasonable care in hiring, qualifying, training, supervising, and retaining the drivers to whom it entrusted commercial motor vehicles. That duty is informed by the FMCSRs, including 49 C.F.R. Parts 382, 383, 391, 395, and 396, and by Seaco's own safety policies.

48. On information and belief, Seaco breached that duty in one or more of the following particulars, which Plaintiff will develop through discovery:

(a) in hiring Cook without conducting the investigations and inquiries required by 49 C.F.R. §§ 391.21, 391.23, and 391.25, or in hiring him despite what those inquiries revealed;

(b) in permitting Cook to drive without a current, valid medical examiner's certificate, or without evaluation and treatment of a condition, including obstructive sleep apnea, that impaired his ability to drive safely, in violation of 49 C.F.R. §§ 391.41 through 391.49;

(c) in failing to train Cook in speed management, night driving, fatigue management, and distracted-driving avoidance;

(d) in failing to monitor and enforce Cook's compliance with the hours-of-service limits of 49 C.F.R. Part 395, and in scheduling or permitting a run that required or encouraged Cook to drive while fatigued, in violation of 49 C.F.R. § 392.6;

(e) in failing to monitor the telematics, camera, and electronic-logging data available to it, which on information and belief would have disclosed prior speeding, lane-departure, fatigue, or distraction events;

(f) in failing to maintain and enforce a controlled-substances and alcohol testing program in compliance with 49 C.F.R. Part 382, including the pre-employment, random, and post-accident testing required by §§ 382.301, 382.303, and 382.305;

(g) in failing to conduct the post-accident alcohol and controlled-substances testing of Cook required by 49 C.F.R. § 382.303 following this collision, or to document the reasons it was not conducted;

(h) in failing to maintain a driver qualification file for Cook in compliance with 49 C.F.R. § 391.51 and to review his driving record annually under § 391.25; and

(i) in retaining Cook as a driver after it knew or should have known that he was unfit, unqualified, or unsafe.

49. Seaco knew or should have known that its employment of Cook created an undue risk of harm to the public. Seaco's negligence was a direct and proximate cause of the collision and of Plaintiff's injuries and damages, and Plaintiff is entitled to recover actual damages from Seaco.

## FOR A SIXTH CAUSE OF ACTION

### Negligent Entrustment — Defendants Seaco and MHC

50. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

51. Seaco owned or had the right to control the Truck and entrusted it to Cook. On information and belief, Seaco knew or should have known that Cook, by reason of fatigue, physical condition, driving history, or lack of qualification, was likely to operate the Truck in a manner that created an unreasonable risk of harm to others.

52. On information and belief, MHC, as owner and lessor of the Tractor, entrusted the Tractor to Seaco for operation in interstate commerce without reasonable inquiry into Seaco's safety management controls, and with knowledge, actual or constructive, of Seaco's above-average vehicle out-of-service rate. This claim against MHC rests on MHC's own negligence and not on its ownership of the Tractor.

53. The entrustment of the Truck to Cook was a direct and proximate cause of the collision and of Plaintiff's injuries and damages, and Plaintiff is entitled to recover actual damages from Seaco and MHC.

## FOR A SEVENTH CAUSE OF ACTION

**Negligent Inspection, Maintenance, and Repair of Defendants Seaco and MHC**

54. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

55. Under 49 C.F.R. § 396.3, every motor carrier must systematically inspect, repair, and maintain all motor vehicles subject to its control, and must keep the brakes, steering, tires, lamps, and other parts and accessories in safe and proper operating condition at all times. Under 49 C.F.R. §§ 396.11 and 396.17, drivers must prepare daily vehicle inspection reports and vehicles must pass periodic inspection.

56. On information and belief, MHC undertook by contract to inspect, maintain, and repair the Tractor and the equipment supplied with it, and MHC's leased fleet had been cited for brake defects in the months preceding the collision.

57. On information and belief, Seaco and MHC breached their duties of inspection, maintenance, and repair, and the Truck was operated with brakes, steering, tires, lighting, or other components in a condition that contributed to Cook's loss of control or inability to stop. These allegations will be confirmed or withdrawn upon inspection of the Truck and production of its maintenance records.

58. The negligent inspection, maintenance, and repair of the Truck was a direct and proximate cause of the collision and of Plaintiff's injuries and damages, and Plaintiff is entitled to recover actual damages from Seaco and MHC. As to MHC, this claim rests on MHC's own negligence and criminal wrongdoing, if any, and not on its status as owner or lessor of the Tractor.

## FOR AN EIGHTH CAUSE OF ACTION

### Willful, Wanton, and Reckless Conduct of Defendant Seaco

59. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

60. On information and belief, Seaco's management knew that dispatching fatigued or unqualified drivers, failing to monitor hours of service, failing to test drivers for drugs and alcohol, and placing vehicles on the road that were not systematically maintained created a high probability of serious injury to the motoring public, and Seaco consciously chose to accept that risk in the interest of its operations and profit.

61. Seaco's conduct was willful, wanton, and reckless and showed a conscious indifference to the rights and safety of others. Plaintiff will prove that conduct by clear and convincing evidence and is entitled to an award of punitive damages against Seaco under S.C. Code Ann. § 15-32-510 et seq.

## DAMAGES

62. As a direct and proximate result of the Defendants' acts and omissions, Plaintiff has suffered and will suffer the following damages, among others: past and future medical expenses; past and future lost wages and loss of earning capacity; physical pain and suffering; mental anguish and emotional distress; permanent impairment, scarring, and disfigurement; loss of enjoyment of life; and the loss of use of personal property.

63. The negligent, grossly negligent, willful, wanton, and reckless acts and omissions of the Defendants combined and concurred to produce Plaintiff's indivisible injuries, and the Defendants are jointly and severally liable to Plaintiff to the full extent permitted by S.C. Code Ann. § 15-38-15.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

(a) for actual damages, including compensatory and consequential damages, in an amount to be determined by the jury;

(b) for punitive damages against Defendants Cook and Seaco in an amount to be determined by the jury under S.C. Code Ann. § 15-32-510 et seq., which Plaintiff

specifically prays for and pleads without stating an amount, as that statute requires;

(c) for prejudgment and post-judgment interest as allowed by law;

(d) for the costs of this action; and

(e) for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

*/s/ James G. Biggart II*

James G. Biggart II
Fed. Bar No. 14195
M. Cooper Klaasmeyer
Fed. Bar. No. 14272
4401 Belle Oaks Drive, Suite 300
North Charleston, South Carolina 29405
Telephone: (843) 973-5186
Email: jbiggart@forthepeople.com
Cooper.klaasmeyer@forthepeople.com
biggartlitigation@forthepeople.com

North Charleston, South Carolina
October 30, 2026